UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

Luis S. Arana Santiago

**Plaintiff**

VS.

Luis Tapia Maldonado, in his personal capacity;

José Heredia Rodríguez; Vivian Vélez Vera;

Marisol Díaz Ocasio; María Rodríguez Sierra

**Defendants**

Civil Num.: 19-cv-2128 (PAD)

RECEIPT # PGR06JC4114 
AMOUNT: $400.00

DEC 1 2 2019

CASHIER'S SIGNATURE

RE: Constitutional Rights

Torts

Jury Trial Demanded

**COMPLAINT FOR VIOLATION TO CONSTITUTIONAL RIGHTS AND TORTS**

TO THE HONORABLE COURT:

Plaintiff, Luis S. Arana Santiago, litigating pro se, hereby alleges upon information and belief as follows:

## I. **STATEMENT OF THE CASE**

This case concerns an Administrative Complaint against the plaintiff initiated by the defendants. Said Administrative Complaint, in its Informal Procedure, was investigated without plaintiff's participation, in violation of the due process of law and in violation of pertinent university regulations. The evidence contained in the administrative docket

1

supports that the defendants encouraged one of plaintiff's female students to complain against him for sexual harassment in a *Quid Pro Quo* fashion.

## II. JURISDICTION

This complaint is brought under the Civil Rights Act, 42 USC §1983. This Court has **subject matter jurisdiction** to hear this case under Article III of the United States Constitution[1] and also under 28 USC §1331[2] and 1343 (a) (4)[3]. For the **supplemental** causes of action invoked under the Constitution of the Commonwealth of Puerto Rico, this Court has jurisdiction pursuant to 28 USC §1367 (a)[4]. For the causes of action regarding defendants' violations of University regulations and procedures, this court also has jurisdiction according to 28 USC §1367 (a). This court has **personal jurisdiction** over defendants according to Rule 4-k of Federal Rules of Civil Procedure[5] and Rule 3.1 (a) (1) of

---

[1] U.S. Constitution, Art. III, §2, cl. 1, in pertinent part, states: "The Judicial Power shall extend to all Cases, in law and Equity, arising under this Constitution, the Laws of the United States…"

[2] **28 USC §1331** (Original Jurisdiction). The district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treatises of the United States.

[3] Title 28 USC §1343 (a) states: "the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person"; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

[4] **28 USC §1367 (a)** (Supplemental Jurisdiction) […] In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. [...]

[5] Rule 4-k: Territorial Limits of Effective Service: (1) *In General*. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.

Puerto Rico Civil Procedure Rules[6]. **Venue** is appropriate in this Court pursuant to 28 USC §1391, as this action is brought in the judicial district in which the unlawful actions against Plaintiff occurred.

### III. THE PARTIES

**The plaintiff***

The plaintiff, **Luis S. Arana Santiago,** is a tenured professor at the University of Puerto Rico in Utuado and more than 28 years of teaching experience at different local and United States universities. His contact information is:

> P.O. Box 500
> Orocovis, PR, 00720
> arana2121@yahoo.com
> 787-624-9583.

**The defendants**

Defendant **Luis Tapia Maldonado (or Luis Tapia)** is the current rector of the University of Puerto Rico in Utuado. His contact information is:

> University of Puerto Rico in Utuado
> PO Box 2500
> Utuado, PR 00641
> luis.tapia@upr.edu .

---

[6] **Rule 3.1 (a) (1) of Puerto Rico Rules of Civil Procedure states:** "The General Court of Justice shall have jurisdiction over any matter or controversy that arises within the territorial limits of the Commonwealth of Puerto Rico."

Defendant **José Heredia Rodríguez (José Heredia or ex-rector)** was the rector of the University of Puerto Rico in Utuado when the incidents that gave rise to the present judicial Complaint happened. His last known contact information is:

* The plaintiff is not registered in any automatic notification service. Any information in regard to this case must be sent to any/or both of the addresses provided in this document.

> P.O. Box 16,
> Utuado, Puerto Rico, 00641
> jose.heredia1@upr.edu .
> (787) 204-5850

Defendant **Vivian Vélez Vera (dean or Vivian Vélez)** was the acting dean of Academic Affairs at the time the Administrative Complaint against the plaintiff was issued. She led the Informal Procedure of the investigation of the Administrative Complaint. Her last known contact information is:

> University of Puerto Rico in Utuado,
> PO Box 2500
> Utuado, PR 00641
> vivian.velez1@upr.edu.

Defendant **Marisol Díaz Ocasio (or Marisol Díaz)** was the Student Advocacy Officer at the time the Administrative Complaint against the plaintiff happened. She participated in the Informal Procedure of the investigation of the Administrative Complaint. Her last known address is:

4

> University of Puerto Rico in Utuado
> PO Box 2500
> Utuado, PR 00641.

Defendant **María Rodríguez Sierra (or María Rodríguez)** was the acting Dean of Students at the time the Administrative Complaint against the plaintiff happened. She participated in the Informal Procedure of the investigation of the Administrative Complaint. Her last known address is:

> University of Puerto Rico in Utuado
> PO Box 2500
> Utuado, PR 00641

## IV. MATERIAL FACTS

**1.** The facts that gave rise to the Administrative Complaint filed against the plaintiff by the defendants occurred during the second semester of the academic year 2017-2018. That semester began on January 20, 2018 and ended on June 8, 2018 (semester). The plaintiff's teaching assignment for that semester included the courses Mate 3171 and Mate 3012. These courses are related to the incidents that gave rise to the Administrative Complaint.

**2.** On the first day of school, January 20, 2018, Dr. Javier Lugo, who was plaintiff's immediate supervisor at the time, informed him that the acting dean of Academic Affairs, Professor Vivian Vélez Vera (dean)[7], **opposed him** teaching the course Mate 3171,

---

[7] The whole matter of the Administrative Complaint revolves mainly around this official and around Dr. José Heredia Rodríguez, who was the rector of UPRU at the time the Administrative Complaint was filed against the plaintiff. Defendant Luis Tapia Maldonado is responsible for continuing with the merit less Administrative Complaint after those officials had to resign because they were involved in so many scandals.

5

*supra,* and suggested the plaintiff meet with her as soon as possible to try to resolve the matter. The plaintiff met with the dean on May 24, 2018 in the evening.

**3.** At that meeting with the dean, the plaintiff asked her about the reasons for her opposing him teaching the course Mate 3171. The dean indicated that:

A. The course was scheduled to begin at 6:00 pm and therefore she could offer it to the professor of her preference and indicated that she already had said professor to teach the course. She also indicated the following reasons:

B. Natural Science courses, specifically, mathematics and chemistry, showed too many withdrawals, and continuous D and F grades in the last semesters.

C. The University of Puerto Rico in Utuado, has an enrollment this semester of an average of 845 students. There are over 40 courses among the five [university] departments that have a low number of students.

D. This situation has reached such magnitude, that a large percentage of students **have been affected in their federal aid**, leaving them without a scholarship, since a student who is enrolled in an Associate Degree must complete his degree in two years, maximum three years.

E. I have received an average of 200 students claiming that **their General Points Average and their transfers and** reclassifications have been affected because they have obtained poor grades in core courses in the Department of Natural Sciences. (*Our Emphasis.*)

6

**4.** It turned out that the plaintiff remained teaching the course Mate 3171[8] against her wishes, since he showed her *Certification No. 82* of the Administrative Board of the UPRU and a rubric for the distribution of courses that had been prepared by the Natural Sciences Personnel Committee that positioned him as the first choice to teach said course.

**5.** The last day for students to partially withdraw from their courses was May 24, 2018. By that date, all of the eight (8) students (students) enrolled in the Mate 3012 course had an F grade and their failure in the course was imminent. Faced with this situation, the students went to the dean to see if she could intervene to help them to not fail the course or help them to not have to withdraw from it. That same day, May 24, 2018, at 3pm[9], the students met with the dean and María Rodríguez to discuss the situation[10]. While the meeting was in progress, these functionaries approached the student Génesis Vélez Feliciano (Génesis, the student) and suggested that she meet with them right after the meeting with all the students ended. These functionaries met with Génesis at 3:40pm and at that meeting **the complaint by the student of sexual harassment** against the plaintiff **happened[11].** That was the beginning of the investigation of the "student's" complaint about sexual harassment and the beginning of the Administrative Complaint.

**6.** In the evening of May 24, 2018, these functionaries also met with the plaintiff to see if "something could be done" so that those students of Mate 3012 would not fail. The plaintiff

---

[8] This was the trigger for the Administrative Complaint that emerged later; although the Complaint per se, arose with the students of the Mate 3012 course, section M23.

[9] The period for the students to withdraw the course expired that day at 5:00 pm.

[10] At the beginning of the meeting, the ex-Dean told the students that the purpose of the meeting was "to listen to their concerns, so that the corresponding actions can be taken."

[11] There is no evidence in the administrative record that the student went to Complaint about the plaintiff of sexual harrasment.

7

informed them that nothing could be done since each of the student's average in the class was so low that they had no real chance of passing the course. Immediately after that, the meeting ended.

**7.** The students obtained a final grade of F in the course.

**8.** Immediately after the end of that semester, the dean told Professor Jorge Torres Bauzá, who was the acting director of Natural Sciences at that time, to ask the plaintiff to turn in the exams of the Mate 3012 course. However, Professor Bauzá **refused to** tell the plaintiff what was the intended purpose of that request, and because of that, among other reasons, the plaintiff did not turn in the exams. The interim ex-rector, Dr. José Heredia Rodríguez, was not pleased with plaintiff's decision not to turn in the exams, as the plaintiff knew later.

**9.** Before those events with the students happened, the plaintiff already had been assigned two (2) courses to teach for the summer of 2018[12]. But after those events with the students and the dean, especially the failure of the students in the Mate 3012 course, those courses "**were taken from**" the plaintiff by the ex-rector. The plaintiff had **no doubt that was** an act of **reprisal** by the ex-rector for the failure of the students of the Mate 3012 course.

**10.** On December 16, 2018, the plaintiff received the Administrative Complaint that serves as the basis for the present judicial Complaint. By that date, the Informal Procedure of the

---

[12] Dr. Javier Lugo had assigned these courses to the plaintiff before the ex-rector asked him to resign as director of the Department of Natural Sciences, because he opposed the ex-rector's intention to raise his own salary, which was done without following the university procedures.

investigation, as required by *Certification 130[13]*, had already passed without the plaintiff's participation.

**11.** The plaintiff had no doubts that the Administrative Complaint too, was also related to the failure of the students of the Mate 3012 course.

**12.** In his response to the Administrative Complaint, the plaintiff requested the rector, Dr. Luis Tapia Maldonado[14] (rector) to dismiss it because the plaintiff did not participate in the Informal Procedure as required by the **due process of law** and by *Certification 130* of the Governing Board of the University of Puerto Rico[15].

**13.** On January 30, 2019, the plaintiff again asked the rector to dismiss the Administrative Complaint because of said violations to university regulations and violations to due process of law. On March 7, 2019, the plaintiff asked the Examining Officer to recommend the rector dismiss the Administrative Complaint because of said violations to university regulations and violations to due process of law. The rector never answered plaintiff's petition to dismiss the Administrative Complaint and the Examining Officer said that he would resolve that issue at the hearings. This caused the plaintiff to be suspicious about defendants' intentions. Therefore, the plaintiff hired attorney Carlo Rivera Turner as his legal counsel before the administrative forum. In the summer of 2019, the rector refused to assign courses to the plaintiff as a consequence of the ongoing investigation of defendants against him. This had been the second time that the administrators at UPRU had denied the plaintiff the opportunity

---

[13] *Certification 130* of the Board of Governors of the University of Puerto Rico establishes the procedure to be followed in an investigation of sexual harassment at the University of Puerto Rico.

[14] Already for the month of October 2018, ex-rector José Heredia "had resigned".

[15] The functionaries that carried out the Informal Procedure did not inform the plaintiff that he was investigated for a sexual harassment complaint, nor did they interview him about the student's allegations.

to teach summer courses because of his participation in an investigative process at UPRU. Those actions, besides being a violation to Act No. 115 of Puerto Rico law of retaliation, is also a violation to *Certification 130,* which prohibits altering the working conditions of a person who is participating in an investigative process at the University of Puerto Rico. *Certification 130, Article XIX, Part A.*

**14.** After attorney Carlo Rivera Turner assumed legal representation of the plaintiff at the administrative forum, he and the plaintiff found **more than twenty** violations to *Certification 130,* to the *General Regulations of the University of Puerto Rico* and the due process of law that had been committed in the investigation of the Administrative Complaint up to that time. In light of said violations, the plaintiff, through his legal representative, again asked the rector to dismiss the Administrative Complaint. This time the rector issued a brief and **insubstantial** answer in which he invoked the organic law of the University of Puerto Rico, Law No. 1 of January 20, 1966, and the power given to him by that law to not dismiss it[16]. However, he did not give any other reason to not dismiss it.

**15.** Some time after January 15, 2019, the rector restricted the plaintiff's entry to the University. On two occasions, the university guards escorted the plaintiff on the way to his office. On both occasions, a guard took the plaintiff to his office in a "golf cart". It should be mentioned that by September 2018, the complainant student had moved to the state of Texas in the United States. Therefore, the plaintiff found no rationale, if there should have been any, for the rector to restrict his entrance to the University. Consequently, the plaintiff formally asked the rector to inform him why he restricted his entrance to the University, but

---

[16] He was acting under color of authority.

the rector never answered. On August 24, 2019, the plaintiff entered the University without being stopped by the university guards. That day, the hearing of the Administrative Complaint was scheduled, but it was cancelled because there was a threat of a storm passing through the island. Because the hearing was suspended, the plaintiff went to greet some of his colleagues at the place where their offices were located. While talking to them, a private guard officer came and told him that on orders from the rector he had to leave the premises. The plaintiff left in order to avoid problems.

**16.** Finally, on October 30, 31, 2019 and November 1, 2019, the hearings on the Administrative Complaint were held. The UPRU brought three (3) of plaintiff's students from the Mate 3012 course as witnesses against him.

**17.** Attorney Beatriz Torres represented the UPRU in the hearings on the Administrative Complaint. When she asked the students about how they finished the Mate 3012 course, the students **revealed** that the administrators at that time, including Dean Vivian Vélez, had promised them to change their final grade from F to C. That change of grade indeed happened as the students at the hearings mentioned it.

**18.** This baffled everyone there and caused attorney Beatriz Torres to object to attorney Carlo Rivera Turner continuing his line of questions to the students. The Examining Officer sustained her objection. This, in turn, caused a tense situation between the Examining Officer and attorney Rivera Turner, and the latter told the Examining Officer that the purpose of the hearing was to **discover the truth** and by objecting to his line of questions, all he was doing was to interrupt that purpose. In spite of the big effort made by attorney Carlo Rivera Turner

to continue his line of questions to investigate the matter more thoroughly[17], the Examining Officer **did not allow him to do it**. That objection of the hearing officer was unwarranted, because attorney Rivera Turner line of questions was intended to prove the leading theory that the Administrative Complaint was fabricated in a *Quid Pro Quo* fashion by the dean, the ex-rector and the other functionaries involved in the investigation.

## V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION: DEPRIVATION OF FEDERAL CIVIL RIGHTS

### (48 USC 1983)

### Violations to Amendment XIV: Due Process

Plaintiff incorporates by reference the facts alleged in all paragraphs above.

**19.** The basic tenet of the due process of law requires that any process in which the government could deprive a person of his property or freedom has to be done in a fair and equitable way.

**20.** Defendants Vivian Vélez, Marisol Díaz and María Rodríguez carried out the Informal Procedure of the Administrative Complaint **without the plaintiff's participation[18]** as was required by *Certification 130* of the governing board of the University of Puerto Rico. Consequently, they did not interview the plaintiff or give him opportunity to counteract

---

[17] Attorney Rivera Turner supported his allegations in Puerto Rico Evidentiary Rules 44(b) and 18.
Rule 44(b)- The credibility of a witness could be challenged trough any pertinent evidence.
Rule 28- Pertinent evidence is any evidence that makes a fact more credible or less credible.
[18] This support the leading theory that the Administrative Complaint was illegitimate.

the student's allegations, acting with total disregard of whether the student's allegations were true or not. Consequently, they acted with reckless, careless disregard and deliberate indifference to the plaintiff's right to due process. Besides, the evidence on record shows that they were motivated **by wrongful intent** as was stated in the paragraphs above.

**21.** In the summer of 2018 defendant José Heredia denied plaintiff acquired benefit to teach summer courses; he did it without the due process of law. By doing so, he was acting under color of authority.

**22.** Also, without the due process of law and acting under color of authority, defendant Luis Maldonado denied plaintiff's acquired benefit to teach summer courses in the summer of 2019.

<u>**Violations to Amendment I: Peaceful assembly**</u>

**23.** As was stated before, on August 24, 2019, the rector asked the private guards of the university to tell the plaintiff that he **<u>had to leave the premises</u>**. By doing so, the rector violated plaintiff's constitutional right to meet in a peaceful assembly. In addition to being a violation of a constitutional right, it caused embarrassment and humiliation to the plaintiff before his fellow professors who were present when that happened.

**SUPPLEMENTAL CAUSES OF ACTION**

<u>**SECOND CAUSE OF ACTION: PUERTO RICO CONSTITUTION**</u>

Plaintiff incorporates by reference the facts alleged in all paragraphs above.

**(i) Violations to Article II, (§7): Due process of law**

**24.** As we have mentioned before, this Informal Procedure of the investigation had been carried out without plaintiff's participation and without the plaintiff's right to due process of law in violation of the provisions of Chapter II, Section 7, of the Constitution of the Commonwealth of Puerto Rico.

**(ii)** **Violations to Article II, §4: Freedom of speech and press; peaceful assembly; petition for redress of grievances**

> "No law will be made abridging the freedom of speech or of the press, or the right of the people to meet in a peaceful assembly and to petition the government for a redress of grievances."

**25.** Plaintiff also incorporates by reference what was stated in paragraph **23.**

**(iii) Violations to Article II, §8: Protection to honor, reputation and private life**

> "Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life."

**26.** All defendants abusively **injured** plaintiff's honor, dignity and reputation by issuing an **illegitimate** sexual harassment complaint **or continuing** with a illegitimate sexual harassment complaint that did not rise to the standard set out by the Office of Civil Rights (OCR) of the US Department of Education, the Equal Employment Opportunity Commission (EEOC), the Supreme Court of the United States, and the Supreme Court of Puerto Rico. The student complaint was an ordinary complaint of a student that knows that she would fail in a course and was trying for the administrators to take pity on her so they would help her to not

fail the course[19]. The evidence on record shows that defendants Vivian Vélez and María Rodríguez **induced** Génesis Vélez to complain about sexual harassment by the plaintiff, and defendant José Heredia carelessly and negligently added charges A-1, A-2 and B-1 of Article VIII of *Certification 130*. The student did not claim those charges added by defendant José Heredia nor did the evidence on record support them. Defendant Luis Tapia Maldonado is responsible for not having carefully investigated whether the Administrative Complaint was legitimate or not before he decided to continue with the investigation. And because of that, defendant Luis Tapia Maldonado is responsible for all the violations to university regulations and due process of law committed by Vivian Vélez, Marisol Díaz, María Rodríguez and José Heredia, who were the functionaries that participated in the investigation before he became rector.

**(iv)Violations to Article II, §1: Dignity and equality of the human being;**

**Discrimination, prohibited**

Plaintiff also incorporates by reference what was stated in paragraph **26**.

> "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality."

---

[19] She was successful in her quest because the administrators illegally changed her final grade from F to C.

**THIRD CAUSE OF ACTION: Article 1802 of Puerto Rico Civil Code: Torts**

Plaintiff incorporates by reference the facts alleged in all the paragraphs above.

> "One, who by action or omission causes harm (damage) to another, because of fault or negligence, is obliged to repair the damage caused."

**(i) Defamation Per Se**

**27.** In the report that was submitted to the rector about the Informal Procedure, defendants Vivian Vélez, Marisol Díaz and María Rodríguez found that the plaintiff was guilty of sexual harassment. However, that was more an accusation than a finding of sexual harassment by said defendants. Therefore, that was a false statement involving immorality, which injured plaintiff's honor and reputation. Also, the evidence on record shows that they were motivated **by a wrongful intent** as was stated in the paragraphs above. For all this, said defendants are liable to the plaintiff.

**28.** Defendant José Heredia is liable to the plaintiff for accusing him of *Quid Pro Quo* sexual harassment in his Administrative Complaint. That was done with actual malice as there were not any *Quid Pro Quo* allegations made by the complainant student, nor were there such allegations in the Informal Procedure Report that was submitted to him by defendants Vivian Vélez, Marisol Díaz and María Rodríguez. Said defendant is also liable to the plaintiff for not allowing him to teach summer courses in 2018 violating Parts A and B of Article XIX of *Certification 130* and without the due process of law as we have stated before.

**29.** Defendants Vivian Vélez, Marisol Díaz and María Rodríguez carried out the Informal Procedure of the investigation with egregious negligence and disregard about the procedure to be followed in the investigation of a sexual harassment complaint at the University of Puerto Rico as outlined in *Certification 130*. By doing so, said defendants put the plaintiff in disadvantage in their investigation and caused him mental anguish and despair when he learned that the Formal Procedure had started without his participation in the Informal Procedure.

**30.** Defendant José Heredia was negligent when he issued the Administrative Complaint against the plaintiff as he was negligent to check whether the functionaries that carried out the Informal Procedure followed the guidelines specified in *Certification 130* on how to investigate a sexual harassment complaint in the University of Puerto Rico, or if there was enough evidence in record to warrant that the investigation should proceed to the Formal Procedure. Also, as we have said, he intentionally and maliciously added three charges of *Quid Pro Quo* sexual harassment against the plaintiff, even when there was no evidence on record to support them.

**31.** Defendant Luis Maldonado is liable to the plaintiff for issuing a University entrance restraining order against the plaintiff. This caused humiliation to the plaintiff and more damage to his reputation. As it happened, on June 12, 2018 and on August 16, 2018, the plaintiff was stopped at the university entrance by university guards and was taken inside campus in a "golf cart". On August 24, 2018, said defendant ordered the private guards to ask the plaintiff to leave campus while the plaintiff was talking to some of his colleagues, causing the plaintiff embarrassment and humiliation and more damage to his reputation.

**32.** The evidence on record strongly supports that defendants Vivian Vélez and María Rodríguez, acting in a *Quid Pro Quo* fashion, encouraged the student Genesis Vélez to complain about sexual harassment by the plaintiff[20], causing damage to his reputation, honor, and causing him mental anguish.

**33.** Defendant Luis Tapia Maldonado did not want to dismiss the Administrative Complaint, at any stage before the hearing, even when there were more than twenty violations to University Regulations and violations to due process of law.  Also, he did not check, or care to check, whether the complaint against the plaintiff was legitimate or not, knowing that the functionaries that started the complaint had to resign their positions after being involved in so many scandals in the University.   Moreover, he denied dismissing the Administrative Complaint even when the student's allegations did not constitute sexual harassment according to the standard set out by the Office of Civil Rights (OCR) of the United States Department of Education, The Equal Employment Opportunity Commission (EEOC), The Supreme Court of the United States and the Supreme Court of Puerto Rico[21]. This caused the plaintiff anxiety and mental anguish as **he distrusted** said defendant's motivation to not dismiss the complaint[22].

---

[20] This will be proven at trial.

[21] There is no evidence on record that the defendants consulted any of the authorities in how to conduct a sexual harassment investigation.

[22] His reluctance to dismiss the Complaint was more an **act of persecution** than an act to redress a sexual harrasment misconduct, as there was not any.

**34.** Defendant José Heredia Rodríguez did not inform the plaintiff of his decision to not offer him summer courses to teach in 2018, causing the plaintiff to loose his opportunity to teach summer school in other places[23].

**35.** Defendant José Heredia decided not give summer courses to plaintiff acting under color of authority and in retaliation for the students of the course Mate 3012 having failed. However, he argued that his reason for not giving summer courses to the plaintiff was because the plaintiff was under an investigation and he needed to protect the "students' community" [from the plaintiff] because he has been accused of sexual harassment. That was a violation to Sections A and B of Article XIX of *Certification 130,* which in Section A states that no employee should be retaliated against for participating in an investigation. Ironically, Section B says that he, as the rector, was supposed to be vigilant that such retaliation did not occur.

**36.** As we have stated in the paragraphs before, all defendants have significantly damaged plaintiff's reputation.

## FOURTH CAUSE OF ACTION: VIOLATIONS TO UNIVERSITY REGULATIONS AND VIOLATIONS TO CERTIFICATION 130

**37.** Substantively, *Certification 130* of the Governing Board of the University of Puerto Rico (2014-2015) creates an administrative cause of action for the victims of sexual harassment or the victims of retaliation at the University of Puerto Rico. For imperative of due process of law, *Certification 130* also delineates the procedure to be followed to investigate such

---

[23] The plaintiff learned that he did not have summer courses assigned the day before summer school started, and that happened because the plaintiff went to the university to find out.

complaints. Because of its binding to the due process clause, its observance is warranted[24]. The following are some violations to the procedure outlined in *Certification 130* during the investigation of the Administrative Complaint against the plaintiff followed by a brief explanation.

**Article IX-Informal Procedure**

**38.** Section C. The student should complain to the Office of Student Advocacy or to the Dean of Students. *Certification No. 130, Article IX, Informal Procedure, Part C.*

**39. Explanation**: The student went to complain to Vivian Vélez at the **Office of Academic Affairs.** And it was she who led the investigation right from the beginning all the way until the Informal Procedure finished, even though she was not supposed to participate in the investigation according to *Certification 130*. It is worth remembering that the dean had a disagreement with the plaintiff at the beginning of the semester when the incidents that led to the Administrative Complaint happened. *See items two (2) and three (3) of this document.*

**40.** Section H. The investigation shall include sworn statements by the complainant and by the person against whom the complaint is filed and any person who knows part or all of the alleged facts [...]. *Certification No. 130, Article IX - Informal Procedure, Part H.*

**41. Explanation:** The plaintiff was never asked to submit an affidavit or any sworn statements about the incidents.

---

[24] "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." Morton V. Ruiz, 415 US 199 (1974); United States v. Nixon , 418 US 683 (1974). "Rules are designed to protect the alien and afford him due process of law" by providing "safeguards against essentially unfair procedures". Bridges v. Wixon, 326 US 135, 152-53 (1945).

42. Section I .   The person against whom a complaint is filed will be given opportunity to be informed about the allegations against him, state his position and defenses. [...]. *Certification No. 130, Article IX - Informal Procedure, Part* I.

43. **Explanation:** Once again, the Informal Procedure was conducted without plaintiff's participation. Therefore, the plaintiff did not know that there was an investigation against him about sexual harassment; much less had he the opportunity to defend himself against the allegations made by the student.

44. Section K. The investigation must be initiated within a reasonable period, which should not be more than seven (7) working days to ensure the prompt resolution of the complaint. Within a reasonable period, not more than fifteen (15) working days, except in exceptional circumstances, the office in charge of the situation, as the case may be, shall report to the appointing authority with the result of the investigation and its recommendations. *Certification No. 130, Article IX - Informal Procedure, Part* K.

45. **Explanation:** The report of the Informal Procedure was submitted to the ex-rector eighty-four (84) days after the investigation began.

## Article XIX-Retaliation

46. Section A. The University of Puerto Rico will maintain a work environment and studies **free from retaliation** because of initiating or participating in investigative or adjudicative procedures. In no case may a person be dismissed, suspended, threatened or **discriminated** against in relation to the terms, conditions, location, benefits or privileges of employment or studies for offering or attempting to offer, verbally or in writing, any

testimony, expression or information before a legislative, investigative or judicial forum on alleged acts of Sexual Harassment. *Certification No 130, Article XIX- Retaliation - Part A. (Our Emphasis.)*

**47. Explanation**: Both the ex-rector and the rector, did not give the plaintiff summer courses to teach in the summers of 2018 and 2019, respectively, in retaliation because the plaintiff was participating in an investigation.

**Article X-General Provisions**

**48.** Section K. Any party that participates in a process to resolve a complaint of sexual harassment or any complaint, whatsoever, will be informed by the person conducting the investigation of his/her rights under applicable laws and regulations. *Certification No.130, Article X, General Provisions, Part K.*

**49. Explanation**: The plaintiff was never informed about his rights.

**Article XI-Formal Procedure**

**50.** Section G-3. Any other measure that is necessary under the particular circumstances of the case [to protect the complainant]. For the adoption of those measures, the interest of the complainant person shall be taken into account. [...] *Certification No.130, Article XI - Formal Procedure Part G-3.*

**51. Explanation**: The rector's "entrance restraining order" imposed upon the plaintiff did not take into account the student interest because at that time she was not attending the

University of Puerto Rico in Utuado and had moved to the United States. So far, the plaintiff does not know why the rector restricted his entrance to the University.

## VIOLATIONS TO UNIVERSITY GENERAL REGULATIONS

**52.** *Section 35.1.5.* "When the conduct of a member of the university staff could result in a disciplinary action, the case will be promptly investigated to determine the veracity of the acts imputed and the possible existence of mitigating or aggravating circumstances." *General Regulations of the University of Puerto Rico, Section 35.1.5.*

**53. Explanation**: As we have indicated, the plaintiff was not invited to participate in the Informal Part of the investigation. The functionaries in charge of the Informal Procedure were negligent and/or careless about whether the student's allegations were true or not, or her motives[25], and if the plaintiff could offer counteracting defenses.

**54.** *Section 35. 2.19* - Violations of the University Law, the provisions of these Regulations and other university regulations. *General Regulations of the University of Puerto Rico, Section 35.2.19.*

**55. Explanation:** There were more than twenty violations to University Regulations in the investigation of the Administrative Complaint.

## VI. ARGUMENT

Plaintiff incorporates by reference all the paragraphs above.

---

[25] Her complaining happened two hours before the time to withdraw from courses expired.

**56.** As we have stated in the paragraphs before, the Administrative Complaint against the plaintiff happened as a direct consequence of the students' failure in one of his courses. This is partially supported by the fact that the university administrators, who did it in violation of the University Regulations, altered the students' final grade[26] in a *Quid Pro Quo* fashion. That action of the administrators was far beyond color of authority and undermined plaintiff's right to issue the final grades in his own courses. Also, it is very possible that this action of the Administrators constituted fraud to the US Department of Education[27].

**57.** Defendant Vivian Vélez, along with defendants Marisol Díaz and María Rodríguez concluded in their report of the Informal Procedure that the plaintiff was guilty of sexual harassment, even though they never invited the plaintiff to participate in the investigation[28]. Moreover, they reached that conclusion without any reference to the standard set out by the Office of Civil Rights (OCR) of the US Department of Education, the Equal Employment Opportunity Commission or the Supreme Courts of the United States and Puerto Rico. Ironically, as they had claimed, that investigation was related to Title IX, and it is the OCR, the Federal Government Instrumentality in charge of enforcing Title IX Act.

**58.** The previous discussion supports the conclusion that the Administrative Complaint was the defendants' willful act of retaliation against the plaintiff for his academic standard of not being willing to pass failing students, in an effort to try to get him terminated from his job because of his reluctance of doing so, thereby, intentionally damaging his reputation.

---

[26] In the hearing of the Administrative Complaint, the students identified defendant Vivian Vélez as one of the functionaries that participated in that change of grades.

[27] Plaintiff has already alerted the US Department of Education about this.

[28] They conducted the investigation ex-parte.

## VII. PRAYER FOR RELIEF

WHEREFORE, and for the foregoing reasons, the Plaintiff, Luis S. Arana Santiago, request this Court that judgment be entered against defendants:

**59. Ordering** defendant José Heredia Rodríguez to pay the plaintiff $11,500 in compensatory damages for not allowing the plaintiff to teach summer courses in 2018 while he was acting under color of authority.

**60. Ordering** defendant Luis Tapia Maldonado to pay the plaintiff $11,500 in compensatory damages for not allowing the plaintiff to teach summer courses in 2019 while he was acting under color of authority.

**61. Ordering** the defendants to pay the plaintiff $7,000 in compensatory damages for legal counseling in the administrative process.

**62. Ordering** the defendants to pay the plaintiff $800,000 in compensatory damages for violation to Article 1802 of Puerto Rico Civil Code and 42 USC 1983 violations; for carrying out the investigation of the Administrative Complaint with total disregard for the procedure outlined in *Certification 130,* and for their egregious indifference to the plaintiff's **right to due process of law** and his right to **personal assembly,** and for **emotional distress, mental anguish** and **damage to his reputation.**

**63. Ordering** the defendants to pay the plaintiff $800,000 in punitive damages for the mental anguish, anxiety, insomnia and injury to his reputation caused by their willful and/or negligent actions.

**64. Ordering** the defendants to pay the plaintiff attorney fees according to 42 USC 1988[29].

## **Demand For Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the plaintiff, Luis S. Arana

Santiago, demands trial by jury in this action of all issues so triable.

December __/2.__ of 2019.

**RESPECTFULLY SUBMITTED**.

Luis S. Arana Santiago[30]
(*Pro Se*)
P.O. Box 500
Orocovis, PR, 00720
arana2121@yahoo.com
787-624-9583.

---

[29] Attorney fees are available under 42 USC 1988 for *Pro Se* litigants. See *Burt v. F. Hennessey*, 929 F. 2d 457, 459 (9 th Circ. 1991).

[30] The plaintiff is not registered in any automatic notification service. Any information in regard to this case must be sent to any/or both of the addresses provided in this document.