INTAKE DROP BOX
RECEIVED & FILED

2020 FEB 25 PM 3:03

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

Luis Arana Santiago

**Plaintiff**

VS.

Luis Tapia Maldonado, in his personal capacity;
José Heredia Rodríguez; Vivian Vélez Vera;
Marisol Díaz Ocasio

**Defendants**

Civil Num.: 19cv2128PAD

RE: Constitutional Rights

Torts

Jury Trial Demanded

**AMENDED COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff, Luis Arana Santiago, litigating pro se, hereby alleges upon information and belief
as follows:

## I. STATEMENT OF THE CASE

This case concerns an Administrative Complaint against the plaintiff initiated by the
defendants. Said Administrative Complaint, in its Informal Procedure, was investigated
without plaintiff's participation, in violation of the due process of law and in violation of
university regulations. The evidence contained in the administrative docket supports that the
defendants encouraged one of plaintiff's female students to complain against him for sexual

harassment in a *Quid Pro Quo* fashion. That student failed the course she took from the plaintiff and her final grade of (F) was later changed to a grade of (C) by the defendants, in violation to pertinent university regulations. In addition, defendants changed the grade of seven (7) more students from (F) to (C), and later asked some of those students to testify against the plaintiff at the Administrative Hearing, also in a *Quid Pro Quo* fashion. After the Administrative Hearing ended, the Examining Officer recommended that all charges against the plaintiff be dismissed, but defendant Luis Tapia Maldonado, terminated the plaintiff from his job anyway, having no legal basis to support it, in violation of due process of law.

## II. JURISDICTION

This complaint is brought under the Civil Rights Act, 42 USC §1983. This Court has **subject matter jurisdiction** to hear this case under Article III of the United States Constitution[1] and also under 28 USC §1331[2] and 1343 (a) (4)[3]. For the **supplemental** causes of action invoked under the Constitution of the Commonwealth of Puerto Rico, this Court has jurisdiction pursuant to 28 USC §1367 (a)[4]. For the causes of action regarding defendants' violations of University regulations and procedures, this court also has jurisdiction according to 28 USC §1367 (a). This court has **personal jurisdiction** over

---

[1] U.S. Constitution, Art. III, §2, cl. 1, in pertinent part, states: "The Judicial Power shall extend to all Cases, in law and Equity, arising under this Constitution, the Laws of the United States..."

[2] **28 USC §1331** (Original Jurisdiction). The district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treatises of the United States.

[3] Title 28 USC §1343 (a) states: "the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person"; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

[4] **28 USC §1367 (a)** (Supplemental Jurisdiction) [...] In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. [...]

defendants according to Rule 4-k of Federal Rules of Civil Procedure[5] and Rule 3.1 (a) (1) of Puerto Rico Civil Procedure Rules[6]. **Venue** is appropriate in this Court pursuant to 28 USC §1391, as this action is brought in the judicial district in which the unlawful actions against Plaintiff occurred.

## III. THE PARTIES

### The plaintiff

The plaintiff, **Luis Arana Santiago**, is a tenured professor at the University of Puerto Rico in Utuado with more than 28 years of teaching experience at different local and United States universities. His contact information is:

> P.O. Box 500
> Orocovis, PR, 00720.
> arana2121@yahoo.com
> 787-624-9583.

### The defendants

Defendant **Luis Tapia Maldonado** (Luis Tapia, Dr. Tapia, rector) is the current rector of the University of Puerto Rico in Utuado. His contact information is:

> University of Puerto Rico in Utuado
> PO Box 2500
> Utuado, PR 00641
> luis.tapia@upr.edu

Defendant **José Heredia Rodríguez** (Dr. Heredia, José Heredia, ex-rector) was the rector of the University of Puerto Rico in Utuado (UPRU) when the incidents that gave rise to the present Judicial Complaint happened. His last contact information is:

---

[5] Rule 4-k: Territorial Limits of Effective Service: (1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.

[6] **Rule 3.1 (a) (1) of Puerto Rico Rules of Civil Procedure states:** "The General Court of Justice shall have jurisdiction over any matter or controversy that arises within the territorial limits of the Commonwealth of Puerto Rico."

P.O. Box 16,
Utuado, Puerto Rico, 00641
jose.heredia1@upr.edu
(787) 204-5850

Defendant **Vivian Vélez Vera** (Vivian Vélez) was the acting dean of Academic Affairs at the time the Administrative Complaint against the plaintiff was issued. She led the Informal Procedure of the investigation of the Administrative Complaint. Her last known contact information is:

#324 Reparto Lucker

Utuado, PR 00641
vivian.velez1@upr.edu

Defendant **Marisol Díaz Ocasio** (Marisol Díaz) was the Student Advocacy Officer at the time the Administrative Complaint against the plaintiff happened. She participated in the Informal Procedure of the investigation of the Administrative Complaint. Her last known address is:

University of Puerto Rico in Utuado
PO Box 2500
Utuado, PR 00641.

## IV. THE FACTS

1. In the beginning of the second semester of the academic year 2017-2018, January 20, 2018, Vivian Vélez opposed the plaintiff to teach a pre-calculus course because she wanted to choose the professor to teach it. That was against the University Regulations, as she was **not supposed to intervene** in the academic program of the professors, as this was a matter to be resolved between the Director of Natural Sciences and the professor[7]. The plaintiff maintained himself teaching the course against her will because there is a University

---

[7] As a matter of fact, it was the Director of Natural Sciences who included that course in plaintiff's program.

Certification[8] that positioned him as first choice to teach it. That incident between the plaintiff and Vivian Vélez evolved into an accusation of sexual harassment against the plaintiff, as we will explain later.

2. The last day for students to partially withdraw from their courses was May 24, 2018. By that date, all of the eight (8) students (students) enrolled in the Mate 3012 course had an (F) grade and their failure in the course was imminent. Faced with this situation, the students went to Vivian Vélez to see if she could intervene to help them to not fail the course or help them to not have to withdraw from it. That same day, May 24, 2018, at 3pm[9], the students met with Vivian Vélez and Dr. María Rodríguez to discuss the situation[10]. While that meeting was in progress, these functionaries **approached** the student Génesis Vélez Feliciano (Génesis, the student) and asked her to meet with them right after the meeting with all the students ended. These functionaries met with Génesis at 3:40pm. At that meeting, **the complaint by the student of sexual harassment** against the plaintiff happened. That was the beginning of the investigation of the "student's" complaint about sexual harassment and the beginning of the Administrative Complaint.

3. In the evening of May 24, 2018, these functionaries also met with the plaintiff to see if "something could be done" so that the students of Mate 3012 would not fail. The plaintiff informed them that nothing could be done since each of the student's average grade was so low that they had no real chance of passing the course. Immediately after that, the meeting ended.

---

[8] *Certification No. 82* of the Administrative Board of the University of Puerto Rico in Utuado (UPRU).
[9] The period for the students to withdraw the course expired that day at 5:00 pm.
[10] At the beginning of the meeting, the ex-Dean told the students that the purpose of the meeting was "to listen to their concerns, so that the corresponding actions can be taken."

4. The students obtained a final grade of (F) in the course, but it was later changed to a grade of (C) by the administrators **in violation** of University Regulations. Vivian Vélez and Marisol Díaz were mentioned by the students as instrumental in changing their grades.

5. Before those incidents with the students happened, the plaintiff already had been assigned two (2) courses to teach for the summer of 2018. However, when the ex-rector learned about the failure of the students in the course Mate 3012, he denied the plaintiff the opportunity to teach summer school. That was an act of **reprisal** by the ex-rector for the failure of the students of the Mate 3012 course.

6. On December 16, 2018, the plaintiff received the Administrative Complaint that serves as the basis for the present Judicial Complaint. By that date, the **Formal Procedure** of the investigation had already started, and by that date, Dr. Heredia was no longer the rector at UPRU. He was succeeded by Dr. Luis Tapia Maldonado (rector, Dr. Tapia).

7. Defendants Vivian Vélez and Marisol Díaz participated in the **Informal Procedure** of the investigation. Vivian Vélez had a **prominent role** in the **Informal Procedure** of the investigation even though she was not supposed to participate in the investigation according to University Regulations, specifically, according to *Certification 130*[11].

8. The **Informal Procedure** of the investigation started on May 24, 2018 and ended on August 16, 2018 **without plaintiff participation**.

---

[11] *Certification 130* of the Board of Governors of the University of Puerto Rico establishes the procedure to be followed in an investigation of sexual harassment at the University of Puerto Rico.

9. In his response to the Administrative Complaint, the plaintiff requested the rector to dismiss it because the plaintiff did not participate in the **Informal Procedure** as required by the **due process of law** and by *Certification 130.*

10. On January 30, 2019, the plaintiff again asked the rector to dismiss the Administrative Complaint because of said violations to *Certification 130* and violations to due process of law. On March 7, 2019, the plaintiff asked the Examining Officer to recommend the rector dismiss the Administrative Complaint because of said violations to *Certification 130* and violations to due process of law. The rector never answered plaintiff's petition to dismiss the Administrative Complaint and this caused the plaintiff to be suspicious about defendants' intentions. The Examining Officer said he would resolve plaintiff's dismissal petition at the hearings.

11. Because the situation was turning extremely suspicious, the plaintiff hired attorney Carlo Rivera Turner (legal counsel) as his legal counsel before the administrative forum.

12. Thereafter, plaintiff's legal counsel found **more than twenty** violations to *Certification 130*, to the *General Regulations of the University of Puerto Rico* and the due process of law that had been committed in the investigation of the Administrative Complaint up to that time. In light of said violations, the plaintiff, through his legal counsel, again asked the rector to dismiss the Administrative Complaint. This time the rector issued a brief and **insubstantial** answer in which he invoked the organic law of the University of Puerto Rico, Law No. 1 of January 20, 1966, and the power given to him by that law to not dismiss it[12]. In the summer of 2019, the rector refused to assign courses to the plaintiff as a consequence of the ongoing

---

[12] He was acting under color of authority.

investigation of defendants against him. This had been the second time that the administrators at UPRU had denied the plaintiff the opportunity to teach summer courses because of his participation in an investigative process at UPRU. Those actions, besides being a violation to Act No. 115 of Puerto Rico law of retaliation, is also a **violation** to *Certification 130*, which prohibits altering the working conditions of a person who is participating in an investigative process at the University of Puerto Rico. *Certification 130, Article XIX, Part A.*

13. Some time after January 15, 2019, the plaintiff learned that the rector had **restricted** plaintiff's entry to the University. On two occasions, the university guards escorted the plaintiff on the way to his office. On both occasions, a guard took the plaintiff to his office in a "golf cart", causing embarrassment and humiliation to the plaintiff. That was an attack on plaintiff's reputation, in violation of Article II, Section 8, of the Constitution of the Commonwealth of Puerto Rico.

14. It should be mentioned that by September 2018, the complainant student had moved to the state of Texas in the United States. Therefore, the plaintiff found no rationale, if there should have been any, for the rector to restrict his entrance to the University. Consequently, the plaintiff formally asked the rector to inform him why he restricted his entrance to the University, **but the rector never answered**.

15. On August 24, 2019, the plaintiff entered the University without being stopped by the university guards. That day, the hearing of the Administrative Complaint was scheduled, but it was cancelled because there was a threat of a storm passing through Puerto Rico. Because the hearing was suspended, the plaintiff went to greet some of his colleagues at the place

where their offices were located. While talking to them, a private guard officer came and told him that on orders from the rector he had to leave the premises. The plaintiff left in order to avoid difficult situations. This was a violation of plaintiff's constitutional right to peaceful assembly as dictated by Article II, Section 4, of the Constitution of the Commonwealth of Puerto Rico and a violation of the first amendment to the Constitution of the United Sates of America.

16. Finally, on October 30, 31, 2019 and November 1, 2019, the hearings on the Administrative Complaint were held. The UPRU brought three (3) of plaintiff's students from the Mate 3012 course as witnesses against him.

17. Attorney Beatriz Torres represented the UPRU in the hearings on the Administrative Complaint. When she asked the students about how they finished the Mate 3012 course, the students **revealed** that the administrators at that time, including defendants Vivian Vélez and Marisol Díaz, had promised them to change their final grade from F to C. That indeed happened as the students at the hearings mentioned it.

18. This baffled everyone there and caused attorney Beatriz Torres to object to plaintiff 's legal counsel continuing his line of questions to the students. The Examining Officer sustained her objection. This, in turn, caused a tense situation between the Examining Officer and plaintiff's legal counsel, and the latter told the Examining Officer that the purpose of the hearing was to **discover the truth** and by objecting to his line of questions, all he was doing was to interrupt that purpose. In spite of the big effort made by plaintiff's legal counsel to

continue his line of questions to investigate the matter more thoroughly[13], the Examining Officer **did not allow him to do it**, in violation of due process of law.

19. After the hearings ended, the Examining Officer submitted a report to the rector about his findings at the hearings. The Examining Officer found that the charges against the plaintiff were not proven at the hearings and consequently recommended the rector to dismiss all the charges against the plaintiff in the Administrative Complaint. In addition, the Examining Officer found that the alleged conduct of the plaintiff **was not sexual in nature** and the procedure outlined in *Certification 130* to investigate the complaint was not followed.

20. In spite of all the violations to *Certification 130*, violations to due process of law and the recommendation from the Examining Officer to dismiss the charges, as they were not proven at the hearings, the rector terminated the plaintiff from his job anyway.

## V. CAUSES OF ACTION

### First Cause of Action: Deprivation of Civil Rights (48 USC 1983)

#### (a) Violations to Amendment XIV: Due Process

21. Plaintiff incorporates by reference all the facts alleged in paragraphs 1-20.

22. The basic tenet of the due process of law requires that any process in which the government could deprive a person of his life, liberty or property have to be done in a **fair** and equitable way.

---

[13] Attorney Rivera Turner supported his allegations in Law No. 170, on Uniform Administrative Procedure, as to the relevance of a testimony because it could resolve a core issue of the dispute or reduce the credibility of the witness.

23. The plaintiff never had the opportunity to confront or cross-examine his accuser, Génesis Vélez Feliciano[14]. That was a violation to his constitutional right of due process of law.

24. Defendants Vivian Vélez and Marisol Díaz carried out the **Informal Procedure** of the Administrative Complaint **without the plaintiff's participation** as required by the due process of law and *Certification 130* of the governing board of the University of Puerto Rico. In other words, the plaintiff did not have an opportunity of an **Informal hearing**, in which he could defend himself from the student allegations.

25. Defendants Vivian Vélez and Marisol Díaz did not follow the procedure outlined in *Certification 130* to investigate the complaint[15].

26. Defendants José Heredia and Luis Tapia did not allowed plaintiff to teach summer school in 2018 and 2019 respectively. That happened without due process of law, both of them acting under **color of authority**. This was also a violation to Article XIX, sections A and B of *Certification 130*.

27. Dr. Luis Tapia terminated the plaintiff from his job, reaching that decision with facts that **did not belong to the record**[16]. This was the main violation to plaintiff's right to due process of law.

---

[14] "In almost every setting where important decisions turn of questions of fact, due process requires an opportunity to confront and cross-examine witnesses". Goldberg v. Kelly, 397 U.S. 254, 269 (1970). "In non-criminal proceedings, the right to confront and cross-examine witnesses is part of procedural due process guaranteed by the Fifth and Fourteenth Amendments. August v. Dep't of Motor Vehicles, 264 Cal. App.2d 52, 60 (1968).

[15] "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." Morton V. Ruiz, 415 US 199 (1974); United States v. Nixon, 418 US 683 (1974). "Rules are designed to protect the alien and afford him due process of law" by providing "**safeguards against essentially unfair procedures**". "Here the liberty of an individual is at stake". "Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet **the essential standards of fairness**". Bridges v. Wixon, 326 US 135, 152-53 (1945). (*Our Emphasis*.)

28. All of the above shows that all defendants subjected the plaintiff to an administrative process that was not fair and equitable, in violation of his right to due process of law, both, substantively and procedurally.

### (b) Violations to Amendment XIV: Equal Protection Clause

29. In the administrative investigation, all defendants discriminated against the plaintiff. Vivian Vélez and Marisol Díaz did not give the plaintiff opportunity to participate in their investigation and Dr. Heredia and Dr. Tapia did not care whether that opportunity was given by the functionaries to the plaintiff.

### (c) <u>Violations to Amendment I: Peaceful assembly</u>

30. As was stated before, on August 24, 2019, the rector asked the private guards of the university to tell the plaintiff that he **had to leave the premises**. By doing so, the rector violated plaintiff's constitutional right to meet in a peaceful assembly. In addition to being a violation of a constitutional right, it caused embarrassment and humiliation to the plaintiff before his fellow professors who were present when that happened.

### VI. SUPPLEMENTAL CAUSES OF ACTION

### Second Cause of Action: Puerto Rico Constitution

### (a) Violations to Article II, (§7): Due Process of Law

31. Plaintiff incorporates by reference paragraphs 21-29 above.

### (b) Violations to Article II, §4: Freedom of Speech and Press;

---

[16] "[T]he decisionmaker's conclusion ...must rest solely on the legal rules and evidence adduced at the hearing." <u>Goldberg v. Kelly</u>, 397 U.S. 254, 271 (1970).

**Peaceful Assembly; Petition for Redress of Grievances**

32. Plaintiff incorporates by reference what was stated in paragraph 15.

**(c) Violations to Article II, §8: Protection to Honor, Reputation and Private Life**

33. Plaintiff incorporates by reference paragraphs 1-20 above.

34. All defendants injured plaintiff's honor, dignity and reputation by issuing or continuing with the investigation of a sexual harassment complaint that did not contain **allegations** of sexual behavior, much less conduct that was severe, and which did not rise to the standard set out by the Office of Civil Rights (OCR) of the U.S. Department of Education, the Equal Employment Opportunity Commission (EEOC), the Supreme Court of the United States, and the Supreme Court of Puerto Rico. The student complaint was an ordinary non-sexual complaint of a student who knows that she would fail in a course and was trying for the administrators to take pity on her so they would help her to not fail the course[17].

**(d) Violations to Article II, §1: Dignity and equality of the human being;**

**Discrimination, prohibited**

35. Plaintiff incorporates by reference what was stated in paragraph 1-20 above.

**Third Cause of Action: Article 1802 of Puerto Rico Civil Code: Torts**

36. Plaintiff incorporates by reference the facts alleged in all the paragraphs above.

> "One, who by action or omission causes harm (damage) to another, because of fault or negligence, is obliged to repair the damage caused."

---

[17] She was successful in her quest because the administrators illegally changed her final grade from F to C.

37. Defendant Vivian Vélez acting in a *Quid Pro Quo* fashion, **encouraged** the student Genesis Vélez to complain about sexual harassment by the plaintiff[18], causing damage to his reputation, honor, and causing him mental anguish.

38. Defendants Vivian Vélez and Marisol Díaz willfully or negligently started an investigation on sexual harassment against the plaintiff based on an ordinary complaint by a student that **did not involve sexual conduct** as it was proven at the hearings, causing the plaintiff to go through an unnecessary administrative process in which he eventually lost his job[19].

39. Defendants José Heredia and Luis Tapia willfully, negligently and with deliberate indifference decided to continue an investigation of a complaint on sexual harassment even though the allegations made by the student against the plaintiff **were not sexual** in nature. That wrongful action by said defendants caused mental anguish, emotional damage, and monetary damages to the plaintiff. It also caused damage to plaintiff's reputation.

40. Defendant Luis Tapia, acting by **color of authority**, willfully or negligently, and with total disregard of plaintiff's right to due process of law decided to **terminate** the plaintiff from his job at the University of Puerto Rico for violations to the University Policy on Sexual Harassment, even though there was not sexual conduct contained in the allegations of the student against the plaintiff.

41. Defendant Luis Tapia, acting by **color of authority**, willfully terminated the plaintiff from his job, even though the charges against the plaintiff **were not proven** at the hearing.

---

[18] This will be proven at trial.
[19] The Administrative hearing was <u>just a formality</u> with no potentially favorable results for the plaintiff.

The Examining Officer found no conduct of sexual nature by the plaintiff, regardless of whether the student allegations were true or not. Consequently, the Examining Officer found no violations to the University of Puerto Rico Policy on Sexual Harassment.

42. Defendants Vivian Vélez and Marisol Díaz did not give the plaintiff participation in their investigation. Hence, they acted with reckless, careless disregard and deliberate indifference of whether the student's allegations were true or not. They did not interview the plaintiff or give him opportunity to contradict the student's allegations, consequently denying plaintiff's right to due process.

43. All defendants are liable to the plaintiff, as the evidence on record shows, that all of them were motivated **by wrongful intent** to terminate the plaintiff from his job[20].

44. Defendants Vivian Vélez, Marisol Díaz and José Heredia willfully, purposely and with total disregard for the consequences of their actions, enticed the student Génesis Vélez Feliciano to complain about the plaintiff for sexual harassment. Specifically, they changed her grade from (F) to (C) in the course Génesis was taking from the plaintiff in exchange for her to complaint against the plaintiff for sexual harassment. They also changed the grades from (F) to (C) to the three students that came to testify against the plaintiff at the hearing.

45. Defendant Luis Tapia is liable to the plaintiff for advancing the investigation to the Formal Procedure, when he knew or should have known that the investigation was carried out with reckless disregard to plaintiff's right to due process of law and knowing that the functionaries that carried out the Informal Procedure did not follow *Certification 130*

---

[20] The fact that the rector did not accept the Examining Officer recommendation to dismiss the charges strongly support it.

guidelines on how to investigate a sexual harassment complaint at the University of Puerto Rico. He **willfully** advanced the investigation to the Formal Procedure in order to cause harm to the plaintiff by eventually terminating him from his job.

46. Defendant Luis Tapia is liable to the plaintiff for advancing the investigation to the Formal Procedure when he knew or should have known that the Administrative Complaint was **illegitimate** as he knew that:

    (i)    Dr. Heredia's administration helped both the complaining student and the students that came to the hearing to testify against the plaintiff to pass the class even though she and those students had failed the class.

    (ii)    Marisol Díaz lied to the students when she said that University Regulations allowed the administrators to change the student's grades when the professor did not discuss the syllabus of the course at the beginning of the semester or did not give back students grades on time.

47. Defendant José Heredia is liable to the plaintiff for accusing him of *Quid Pro Quo* sexual harassment in his Administrative Complaint. That wrongful action was done with actual malice to cause harm to the plaintiff, as there were not any *Quid Pro Quo* allegations made by the complainant student, nor were there such allegations in the Informal Procedure Report.

48. Defendants Vivian Vélez and Marisol Díaz carried out the Informal Procedure of the investigation with egregious negligence and complete disregard about the procedure to be followed in the investigation of a sexual harassment complaint at the University of Puerto

Rico as outlined in *Certification 130*. That wrongful action of said defendants was unfair to the plaintiff and caused him mental anguish and despair when he learned that the Formal Procedure had already started without him having participated in the Informal Procedure of the investigation. This was a violation of plaintiff's right to due process of law.

49. Defendant José Heredia was negligent when he issued the Administrative Complaint against the plaintiff, as he did not check whether the functionaries that carried out the Informal Procedure followed the guidelines specified in *Certification 130* on how to investigate a sexual harassment complaint in the University of Puerto Rico. He willfully or negligently advanced the investigation to the Formal Procedure and pressed charges on the plaintiff for violations to *Certification 130* when there were not sexual conduct allegations in the student complaint. In addition, as we have said, he **intentionally** and **maliciously** added three charges of *Quid Pro Quo* sexual harassment against the plaintiff, even when there was no evidence on record to support them.

50. Defendant Luis Maldonado is liable to the plaintiff for issuing an order restraining plaintiff entrance to the University. This wrongful action caused embarrassment, humiliation and damage to plaintiff's reputation and honor. As it happened, on June 12, 2018 and on August 16, 2018, the plaintiff was stopped at the university entrance by university guards and was taken inside campus in a "golf cart". On August 24, 2018, said defendant ordered the private guards to ask the plaintiff to **leave campus** while the plaintiff was talking to some of his colleagues, causing the plaintiff embarrassment and humiliation and more damage to his reputation.

51. Defendant Luis Tapia did not want to dismiss the Administrative Complaint, even when there were more than twenty violations to University Regulations and violations to due process of law. Also, he denied dismissing the Administrative Complaint even when the student's allegations did not constitute sexual harassment according to the standard set out by the Office of Civil Rights (OCR) of the United States Department of Education, The Equal Employment Opportunity Commission (EEOC), The Supreme Court of the United States and the Supreme Court of Puerto Rico[21]. This caused the plaintiff anxiety and mental anguish as he distrusted said defendant's motivation to not dismiss the complaint.

52. Defendant José Heredia did **not inform** the plaintiff **in advance** of his decision to not offer him summer courses to teach in 2018, causing the plaintiff **monetary damages** as the plaintiff lost his opportunity to teach summer school in other universities[22].

53. Defendant José Heredia, acting **under color of authority,** decided not give summer courses to the plaintiff because the plaintiff was under an investigation. That wrongful action of said defendant was a violation to Sections A and B of Article XIX of *Certification 130,* which in Section A states that no employee should be retaliated against for participating in an investigation. That wrongful action of said defendant was also a violation of due process of law to the plaintiff.

54. As a consequence of defendants' wrongful actions, all defendants have damaged plaintiff's honor and reputation and have caused the plaintiff embarrassment and humiliation.

---

[21] There is no evidence on record to show that the defendants consulted any of the authorities in a sexual harassment investigation. They did it their own way.
[22] The plaintiff learned that he did not have summer courses assigned the day before summer school started, and that happened because the plaintiff went to the university to find out.

55. As a consequence of defendants' wrongful actions, plaintiff has suffered emotional damage and mental anguish and distress.

56. As a consequence of defendants' wrongful actions, the plaintiff has suffered monetary damages, including loss of income and attorney fees in the Administrative Procedure.

57. All defendants acted objectively, unreasonably and willfully, maliciously and/or with reckless disregard of the consequences of their actions by issuing and/or continuing with an illegitimate sexual harassment complaint. Accordingly, plaintiff is entitled to compensatory damages, punitive damages, attorney fees, and any other form of relief allowed by law.

58. All defendants are liable to the plaintiff for **compensatory** and **punitive** damages under 42 USC 1983 for acting under color of authority.

### Fourth Cause of Action: Violations to University Regulations

59. *Certification 130* of the Governing Board of the University of Puerto Rico (2014-2015) creates a cause of action for the victims of sexual harassment or the victims of retaliation at the University of Puerto Rico. For imperative of due process of law, *Certification 130* also delineates the procedure to be followed to investigate such complaints. Because of its binding to the due process clause, its observance is warranted[23]. The following are some violations to the procedure outlined in *Certification 130* during the investigation of the Administrative Complaint against the plaintiff followed by a brief explanation.

---

[23] "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." Morton V. Ruiz, 415 US 199 (1974); United States v. Nixon , 418 US 683 (1974). "Rules are designed to protect the alien and afford him due process of law" by providing "safeguards against essentially unfair procedures". Bridges v. Wixon, 326 US 135, 152-53 (1945).

60. Section C. The student should complain to the Office of Student Advocacy or to the Dean of Students. *Certification No. 130, Article IX, Informal Procedure, Part C.*

61. **Explanation**: The student went to complain to Vivian Vélez at the **Office of Academic Affairs.** And it was she who led the investigation right from the beginning all the way until the Informal Procedure finished, even though she was not supposed to participate in the investigation according to *Certification 130.* It is worth remembering that the dean had a disagreement with the plaintiff at the beginning of the semester when the incidents that led to the Administrative Complaint happened. *See items two (2) and three (3) of this document.*

62. Section H. The investigation shall include sworn statements by the complainant and by the person against whom the complaint is filed and any person who knows part or all of the alleged facts [...]. *Certification No. 130, Article IX - Informal Procedure, Part H.*

63. **Explanation**: The plaintiff was never asked to submit an affidavit or any sworn statements about the incidents.

64. Section I. The person against whom a complaint is filed will be given opportunity to be informed about the allegations against him, state his position and defenses. [...]. *Certification No. 130, Article IX - Informal Procedure, Part I.*

65. **Explanation**: Once again, the Informal Procedure was conducted without plaintiff's participation. Therefore, the plaintiff did not know that there was an investigation against him about sexual harassment; much less had he the opportunity to defend himself against the allegations made by the student.

66. Section K. The investigation must be initiated within a reasonable period, which should not be more than seven (7) working days to ensure the prompt resolution of the complaint. Within a reasonable period, not more than fifteen (15) working days, except in exceptional circumstances, the office in charge of the situation, as the case may be, shall report to the appointing authority with the result of the investigation and its recommendations. *Certification No. 130, Article IX - Informal Procedure, Part* K.

67. **Explanation**: The report of the Informal Procedure was submitted to the ex-rector eighty-four (84) days after the investigation began.

### Article XIX-Retaliation

68. Section A. The University of Puerto Rico will maintain a work environment and studies **free from retaliation** because of initiating or participating in investigative or adjudicative procedures. In no case may a person be dismissed, suspended, threatened or **discriminated** against in relation to the terms, conditions, location, benefits or privileges of employment or studies for offering or attempting to offer, verbally or in writing, any testimony, expression or information before a legislative, investigative or judicial forum on alleged acts of Sexual Harassment. *Certification No 130, Article XIX-Retaliation - Part A. (Our Emphasis.)*

69. **Explanation**: Both the ex-rector and the rector, did not give the plaintiff summer courses to teach in the summers of 2018 and 2019, respectively, in retaliation because the plaintiff was participating in an investigation.

### Article X-General Provisions

70. Section K. Any party that participates in a process to resolve a complaint of sexual harassment or any complaint, whatsoever, will be informed by the person conducting the investigation of his/her rights under applicable laws and regulations. *Certification No.130, Article X, General Provisions, Part K.*

71. **Explanation**: The plaintiff was never informed about his rights.

### Article XI-Formal Procedure

72. Section G-3. Any other measure that is necessary under the particular circumstances of the case [to protect the complainant]. For the adoption of those measures, the interest of the complainant person shall be taken into account. [...] *Certification No.130, Article XI - Formal Procedure Part G-3.*

73. **Explanation**: The rector's "entrance restraining order" imposed upon the plaintiff did not take into account the student's interest because at that time she was not attending the University of Puerto Rico in Utuado and had moved to the United States. So far, the plaintiff does not know why the rector restricted his entrance to the University.

### VIOLATIONS TO UNIVERSITY GENERAL REGULATIONS

74. *Section 35.1.5.* "When the conduct of a member of the university staff could result in a disciplinary action, the case will be promptly investigated to determine the veracity of the acts imputed and the possible existence of mitigating or aggravating circumstances." *General Regulations of the University of Puerto Rico, Section 35.1.5.*

75. **Explanation**: As we have indicated, the plaintiff was not invited to participate in the Informal Part of the investigation. The functionaries in charge of the Informal Procedure were negligent and/or careless about whether the student's allegations were true or not, and if the plaintiff could offer contradictory defenses.

> 76. *Section 35. 2.19* - Violations of the University Law, the provisions of these Regulations and other university regulations. *General Regulations of the University of Puerto Rico, Section 35.2.19.*

77. **Explanation:** There were more than twenty violations to University Regulations by the functionaries that investigated the Administrative Complaint.

## VI. ARGUMENT

78. Plaintiff incorporates by reference all the paragraphs above.

79. As we have stated in the paragraphs above, the Administrative Complaint against the plaintiff happened as a direct consequence of the students' failure in one of his courses and was motivated by wrongful intent. This is partially supported by the fact that the university administrators altered the students' final grades[24] in violation of the University Regulations. That action was taken under color of authority and undermined plaintiff's right to issue the final grades in his own courses. Also, it is very possible that this action of the Administrators constituted fraud to the U.S. Department of Education.

---

[24] At the hearing of the Administrative Complaint, the students identified defendant Vivian Vélez and Marisol Díaz as two of the functionaries that participated in that change of grades.

80. Defendants Vivian Vélez and Marisol Díaz along with María Rodríguez concluded in their report of the Informal Procedure that the plaintiff was guilty of sexual harassment, even though they never invited the plaintiff to participate in the investigation. They reached that conclusion without any reference to the standard set out by the Office of Civil Rights (OCR) of the U.S. Department of Education, the Equal Employment Opportunity Commission or the Supreme Courts of the United States and Puerto Rico. Ironically, as they had claimed, that investigation was related to Title IX, and it is the OCR, the Federal Government Instrumentality in charge of enforcing Title IX Act.

81. The previous discussion supports the conclusion that the Administrative Complaint was illegitimate and it was the defendants' willful act of **retaliation** against the plaintiff for his academic standard of not being willing to pass failing students.

## VII. PRAYER FOR RELIEF

WHEREFORE, and for the foregoing reasons, the Plaintiff, Luis Arana Santiago, request this Court that judgment be entered against defendants:

82. **Ordering** defendant José Heredia to pay the plaintiff $11,500 in compensatory damages for not allowing him to teach summer courses in 2018 while he was acting under color of authority and did it without due process.

83. **Ordering** defendant Luis Tapia to pay the plaintiff $11,500 in compensatory damages for not allowing him to teach summer courses in 2019 while he was acting under color of authority and did it without due process.

84. **Ordering** the defendants to pay $9,000 in compensatory damages for attorney fees in the administrative process.

85. **Ordering** the defendants to pay the plaintiff $800,000 in **compensatory damages** for all violations under Article 1802 of Puerto Rico Civil Code and for 42 USC 1983 violations and for their egregious indifference to the plaintiff's right to due process of law and damage to his reputation.

86. **Ordering** the defendants to pay the plaintiff $800,000 in **punitive damages** for the mental anguish, anxiety, insomnia, mental distress and injury to his reputation caused by their actions.

87. **Ordering** the defendants to pay the plaintiff s wages up until this complaint is resolved or the plaintiff get reinstated.

88. **Ordering** the defendants to pay the plaintiff attorney fees according to 42 USC 1988[25].

## **Demand For Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the plaintiff, Luis Arana Santiago, demands trial by jury in this action of all issues so triable.

February _____ of 2020.

RESPECTFULLY SUBMITTED.

---

[25] Attorney fees are available under 42 USC 1988 for *Pro Se* litigants. See *Burt v. F. Hennessey*, 929 F. 2d 457, 459 (9 th Circ. 1991).

Luis S Arana Santiago
PRO SE[26]
P.O. Box 500
Orocovis, PR, 00720
arana2121@yahoo.com
(787) 624-9583

---

[26] Plaintiff is not registered in any automatic response system like SUMAC. Therefore, all correspondence regarding this Complaint should be sent to the contact information provided in this document.