Luis Arana Santiago

**Plaintiff**

VS.

Luis Tapia Maldonado, in his personal capacity;

José Heredia Rodríguez; Vivian Vélez Vera;

Marisol Díaz Ocasio

**Defendants**

Num.: 3:19-cv-02128

RE: Constitutional Rights

Torts

RECEIVED & FILED
2021 FEB 19

---

## MOTION IN OPPOSITION OF DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE COURT:

The Plaintiff, Luis Arana Santiago, acting *Pro Se*, respectfully comes to this Honorable

Court and states as follows.

### INTRODUCTION

1. The purpose of this motion is to oppose defendants' petition to this Court to dismiss
   Plaintiff's Second Amended Complaint.

2. Defendants asked this Court to dismiss the Complaint based on absolute and qualified
   immunity issues, statute of limitation, failure to plead sufficient facts to establish a

violation of a constitutional right, lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

3. Plaintiff now discusses why the Complaint should not be dismissed for any of the defendants' reasons.

**Dismissal under Rule 12(b)(6) of Federal Rules of Civil Procedure**

4. In their "Motion to Dismiss", the Defendants ask this Court to dismiss all Plaintiff's causes of actions because they are not actionable; this Court lack subject matter jurisdiction; Plaintiff had failed to state a claim upon which relief can be granted and/or the causes of action are time-barred by applicable statutes of limitations.

5. Plaintiff's claims mainly address the Defendants' violation of well-established rights. Consequently, the Defendants are **liable** for their violations of those well-established rights to the Plaintiff. Therefore, Plaintiff's causes of actions are **actionable;** he is entitled to relief; and this Honorable Court has **subject matter jurisdiction** as is explained in the Complaint.

6. As it was mentioned in the Complaint, the Informal Procedure of the "investigation" was conducted without Plaintiff's participation or awareness. Plaintiff became **aware** that Vivian Vélez- Vera and Marisol Díaz-Ocasio had conducted an investigation for sexual harassment against him when he received the Administrative Complaint on **December 16, 2018. On December 12, 2019,** Plaintiff filed his Complaint in this Honorable Court. Consequently, the one-year statute of limitation for his causes of action related to the Informal Procedure of the Investigation had not passed at the time he filed his Complaint because they could not have been actionable before December 16, 2018.

7. The Plaintiff makes the observation to this Court that in their "Motion to Dismiss" the Defendants did not argue that the rights mentioned by the Plaintiff in his Complaint they had violated are well established.

## ABSOLUTE IMMUNITY

8. First, neither of the defendants is entitled to absolute immunity. In general, absolute immunity is given to a very limited class of officials.

9. In Forrester v. White, it was established that, "The Court has generally been quite sparing in its recognition of claims to absolute official immunity". Forrester v. White, 484 U. S. 219. Also, the Supreme Court has **refused** to extend absolute immunity beyond a very limited class of officials, which includes the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, "whose special functions or constitutional status requires complete protection from suit." Harlow v. Fitzgerald, 457 U. S. 800, 807 (1982). Absolute immunity has also been extended to prosecutors acting **as advocates** for the State. However, "Absolute immunity depends not on the titles of officials but their functions". Frazier v. Bailey, 957 F.2d 920, 931n.12 (1st Cir. 1992). (*Our Emphasis*.)

10. Prosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case insofar as that conduct is "intimately associated with the **judicial phase** of the criminal process". Imbler v. Pachtman, 424 U. S. 409 (*Our Emphasis*). However, absolute immunity does not apply, "[w]hen a prosecutor performs the **investigative functions** normally performed by a detective or police officer," Buckley v. Fitzsimmons, 509 U.S. 259 (1993). (*Our Emphasis*).

11. In the administrative case that the University of Puerto Rico in Utuado (UPRU) initiated against the Plaintiff, the role played by defendants Marisol Díaz-Ocasio and Vivian Vélez-Vera was **investigative** rather that prosecutorial. In that administrative scenario, the lawyer that presented the case on behalf of UPRU at the hearings, namely, attorney Beatriz Torres-Torres, is the only person who could be thought of acting as a prosecutor for the purpose of absolute immunity. Therefore, Marisol Díaz-Ocasio and Vivian Vélez-Vera are **not entitled** to absolute immunity because their role was investigative rather than prosecutorial.

## QUALIFIED IMMUNITY

12. In paragraph six (6) of their "Motion to Dismiss", Defendants ask this Court to dismiss Plaintiff's claims under Section 1983 because there are not actionable constitutional claims and Plaintiff has failed to plead facts to establish that the appearing co-defendants knowingly acted in violation of law.

13. All constitutional violations in the Complaint are actionable because they are violations to clearly established rights. To be entitled to qualified immunity, it is not sufficient that the particular officer did not know that his conduct violates the law. Although, it is true that qualified immunity does not protect those officials that knowingly violate the law, in general it does not protect those officials that violate "clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982), at 817; Lassiter v. Alabama A & M University Board of Trustees, 28 F.3d 1146 (11th Cir. 1994)(en banc) at 1149. To determine whether an official is entitled to qualified immunity, the court needs to consider (1) whether the constitutional right alleged involved a clearly established one; and (2) whether a

reasonable official in the same circumstances would have understood that his or her conduct violated that right. <u>Vega Santana v. Trujillo Panisse</u>, 547 F. Supp. 2d 129, 140 (D. Puerto Rico 2008).

## PROCEDURAL DUE PROCESS VIOLATIONS AND IMMUNITY

14. The basic guarantee of procedural due process is that, "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be fore-warned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Amsden v. Moran</u>, 904 F.2d 748,753 (1st Cir. 1990) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552(1965)). A key datum is whether "some form of hearing is [provided] **before an individual is finally deprived** of [the] interest." <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976); <u>Herwins v. City of Revere</u>, 163 F.3d 15, 18 (1st Cir.1998); <u>Grannis v. Ordean</u>, 234 U.S. 385, 394. *(Emphasis supplied.)*

15. "Notice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process." <u>Gorman v. University of Rhode Island</u>, 837 F.2d 7 (1st Cir. 1988).

16. Since the Defendants did not give the Plaintiff notice and opportunity to be heard before (or after) they encroached upon the Plaintiff's property and liberty interests as stated in the Complaint, they had violated well established procedural due process rights to the Plaintiff, making them liable for it. Because they have not shown to this Court that their actions were **objectively** reasonable as measured by reference to those clearly established rights, they are not entitled to qualified immunity for their procedural due process violations as stated in the Complaint.

## SUBSTANTIVE DUE PROCESS VIOLATIONS

17. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U. S. 539, 558 (1974). Substantive due process, however, "imposes limits on what a state may do regardless of what procedural protection is provided". Monroe v. Pape, 365 U.S. 167; Rochin v. California, 342 U.S. 165. Wolff v. McDonell

18. There are two theories under which a plaintiff may bring a substantive due process claim. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, he must prove that the state's conduct "shocks the conscience." Brown v. Hot, Sexy Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir. 1995) (citations omitted); Cruz-Erazo v. Rivera-Montaez, 212 F.3d 617 (1st Cir. 2000).

19. In paragraph 21 of their "Motion to Dismiss", the Defendants asserted that Plaintiff's claims against defendant Vivian Vélez- Vera are not actionable under Section 1983 because during the informal process Plaintiff was not deprived of a property interest. Plaintiff clarifies that the due process claims against Vivian Vélez-Vera are about the second theory established in paragraph 18 above, which does not require a deprivation of a property interest to be actionable.

20. At the time the Defendants acted it was clearly established in the 1st Circuit that school authorities that make arbitrary and capricious decisions significantly affecting a tenured teacher's employment status are liable for a substantive due process violation. Anny Newmann v. Commonwealth of Mass., 884 F.2d 19 (1st Cir. 1984). In School

environment, decisions unrelated to academic concerns, taken for trivial reasons or wholly unsupported in fact are considered to be arbitrary and capricious. McEnteggart v. Cataldo, 451 F.2d 1109, 1111 (1st Cir.1971); Drown v. Portsmouth School Dist., 451 F.2d 1106, 1108 (1st Cir.1971). The Supreme Court has established that conduct intended in some way **unjustifiable** by any government interest is most likely to support substantive due process claim. County of Sacramento v. Lewis, 523 U.S. 833 (1988). (*Our Emphasis.*)

21. In situations where actors have an opportunity to reflect, deliberate indifference may suffice to shock the conscience. "When such extended opportunities to do better are teamed with protracted failure to even care, indifference is really shocking". See County of Sacramento v. Lewis, *supra*. See also Rivera v. Rhode Island, 402 F.3d 27 (1st Cir. 2005) (" In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to "shock the conscience").

22. In their "Motion to Dismiss", the Defendants did not show to this Court, or even claimed, that their actions as alleged in the Complaint were in some way justifiable, let alone did they show to this Court that their actions were taken for academic concerns, or that their actions were supported by fact. Consequently, their conduct was arbitrary and capricious, in violation of substantive due process rights of the Plaintiff. Therefore the Defendants are **liable** for the violation of substantive due process rights of the Plaintiff as stated in the Complaint. Particularly, defendants José Heredia-Rodríguez and Luis Maldonado-Tapia had not given this Court any reason or justification for denying the Plaintiff his entitlement to teach summer school in 2018 and 2019. Also, defendant Luis Tapia-

Maldonado had not given this Court any reason or justification for restricting Plaintiff entrance to the Utuado Campus of the University of Puerto Rico.

23. All actions by Defendants that are related to substantive due process claims in Plaintiff's Complaint constituted an abuse of power taken under color of law, intended to injure the Plaintiff because he did not please them in **giving** the students passing grades as they wanted.

24. In a meeting with the students of the course Mate 3012 that was held on May 24, 2018, defendant Vivian Vélez-Vera called one of Plaintiff's students, namely Génesis Vélez-Feliciano, to start a complaint against the Plaintiff that eventually was escalated by Marisol Díaz- Ocasio and herself to a sexual harassment complaint. To accomplish their ill-intentioned goal, the administrators illicitly changed the students' grades in a *Quid Pro Quo* fashion.

25. At the hearings, defendants Marisol Díaz-Ocasio and Vivian Vélez- Vera were particularly mentioned by the students as having participated in the illicit process of changing their grades, in violation of university regulations.

26. Defendant José Heredia-Rodríguez was aware that "pertinent arrangements" were made so that the student Génesis Vélez-Feliciano finished the semester as he mentioned in the Administrative Complaint. Discovery is needed to know exactly the role defendant José Heredia-Rodríguez played in this illicit change of grades for the students. When defendant Luis Tapia-Maldonado succeeded defendant José Heredia-Rodríguez as acting rector, he knew or should have known that the Administrative Complaint was a sham just by looking at the record. Also, when defendant Luis Tapia-Maldonado succeeded defendant José Heredia-Rodríguez as acting rector, he knew or should have known about

the illicit change of grades to the students by functionaries of the administration of defendant José Heredia-Rodríguez, as it was mentioned in the Administrative Complaint that **some arrangements** were made for the complainant student to finish the semester.

27. Consequently, defendant Luis Tapia-Maldonado knew or should have known that the testimony that the students were going to give at the hearing was ill motivated and illegitimate. He could also have realized that the testimony of the students at the hearing was illegitimate just by looking at the record, as it reveals that the students **never complained, mentioned,** or **denounced** to any university official about the specific conduct by the Plaintiff they alleged when testified at the hearing.

28. It is important to mention that the day after the students testified about the illicit change of grades that had been made under defendant José Heredia-Rodríguez's administration, Plaintiff's counsel in the administrative process informed defendant Luis Tapia-Maldonado about it. Therefore, by acting willfully or being deliberately indifferent in regard to the truthfulness of the student's testimony, it is fair to say that defendant Luis Tapia-Maldonado **encouraged** the students to give a false testimony against the Plaintiff at the hearing. It shocks the conscience that in his Resolution to terminate the Plaintiff from his job, defendant Luis Tapia-Maldonado totally relied on the students' testimony at the hearings. In support for his decision to terminate the Plaintiff from his job, defendant Luis Tapia-Maldonado **added** in his resolution facts that were taken from the students' testimony that **were not included in the Administrative Complaint**, nor had been claimed by the complainant student.

29. Plaintiff has made clear to this Honorable Court that the conduct exhibited by the Defendants in the administrative process at UPRU against the Plaintiff really shocks the

conscience. They fabricated a **pre-textual** accusation of sexual harassment of the Plaintiff, to then use it to deny him his entitlement to teach summer courses; to deny him entrance to campus, and to terminate him from his job through an administrative process in which Plaintiff's well established rights were violated.

## QUALIFIED IMMUNITY

30. Because qualified immunity is an affirmative defense, it is been established in this Circuit that the burden of proof is on the defendants. <u>Dimarco-Zappa V. Cabanillas</u>, 238 F.3d 25 (1st Cir. 2001); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Gómez v. Toledo</u>, 446 U.S. 635.

31. In the case Davis V. Scheren, 468 U.S. 183, it was held that:

> A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue. Whether an official may prevail in his qualified immunity defense depends upon the objective reasonableness of his conduct as measured by reference to clearly established law. No other circumstances are relevant to the issue of qualified immunity. *Harlow v. Fitzgerald,* 457 U. S. 800 (1982).

32. Defendants are liable because they had violated well established rights of the Plaintiff as stated in the Complaint, and are not entitled to qualified immunity because they had not shown to this Court, or even claimed, that their actions were objectively reasonable as measured by reference to the clearly established rights mentioned in the Complaint.

33. Although it is true that qualified immunity does not protect those officials that knowingly violate the law, in general, it does not protect those officials that violate "clearly

established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800 (1982), at 817; Lassiter v. Alabama A & M University Board of Trustees, 28 F.3d 1146 (11th Cir. 1994)(en banc) at 1149. To determine whether an official is entitled to qualified immunity, the court needs to consider (1) whether the constitutional right alleged involved a clearly established one; and (2) whether a reasonable official in the same circumstances would have understood that his or her conduct violated that right. Vega Santana v. Trujillo Panisse, 547 F. Supp. 2d 129, 140 (D. Puerto Rico 2008).

34. Besides having violated well-established rights of the Plaintiff, the Defendants' conduct was a clear abuse of power. They used Plaintiff's students in a *Quid Pro Quo* fashion to help them to support a sexual harassment complaint against the Plaintiff by changing their failing grades of F to a passing grade of C. To accomplish that ill intended goal, they misused the power given to them by the university law and regulations. Also, the entrance restriction to campus by defendant Luis Tapia-Maldonado without any basis in fact or justification; his denial to let the Plaintiff teach summer courses in 2019; the denial of defendant José Heredia- Rodríguez to let the Plaintiff teach summer courses in 2018; the no participation given to the Plaintiff in the Informal Procedure of the investigation by Vivian Vélez-Vera and Marisol Díaz –Ocasio and the Plaintiff's termination from his job by defendant Luis Tapia-Maldonado, even though the hearing officer did not find the Plaintiff guilty of the charges against him, were all clear acts of intentional misuse and abuse of power by the Defendants, as it was their violation to Plaintiff's civil rights in the course of the administrative investigation. This supports that none of the Defendants is entitled to qualified immunity. Maritza Cruz Erazo, et al v.

Carlos J. Rivera et al, 212 F.3d 617 (1st Cir. 2000) (Qualified immunity defense seems inappropriate in a case where the conduct is alleged to be an intentional abuse of power).

35. If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)". Shipp v. McMahon, 234 F.3d 907, 912 (5th Cir. 2000).

36. If the law was clearly established, the immunity defense should fail. Carey v. City of Fall River, 708 F. Supp. 431 (D. Mass. 1998), citing Harlow v. Fitzgerald, 457 U.S. 800, 102, S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

37. Defendant Vivian Vélez-Vera was not authorized by Certification 130 to participate in the investigation related to the Administrative Complaint against the Plaintiff. In the case Gardenhire v. Schubert, 205 F.3d 303, 311(6th Cir. 2000), it was established that the defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question. Defendant Vivian Vélez-Vera is not entitled to qualified immunity because she violated clearly established rights of the Plaintiff, and she was not acting within the scope of her discretionary authority, as she was not authorized to participate in the investigation.

## QUALIFIED IMMUNITY FOR STATE CAUSES OF ACTIONS:

38. In Puerto Rico, the qualified immunity defense against liability could only be invoked when the public employee is acting in his official capacity within the scope of his official duties as long as it complies with some criteria set out by the Supreme Court of Puerto Rico. Specifically, this defense cannot be invoked in situations where the public employee did not act in good faith, or even if he acted in good faith, he did not act

rationally, or in situations where he should have known that his conduct was illegal. The burden of proof is on the public employee. <u>Acevedo v. Srio. Servicios Sociales</u>, 112 DPR 256, 262 (1982); <u>Rosario M. Vázquez v. Kelvin y/o Kevin Pamias</u>, KLAN201700872; <u>Julio Collazo Pérez v. E.L.A.</u>, HLCE201900662.

39. The arguments that we have given to support that defendants **are not entitled** to qualified immunity for their violations to the Constitution of the United States also support that they are **not entitled** to qualified immunity for the State's causes of actions, namely, those related to violations to the Puerto Rico Constitution and to the torts under Article 1802 of Puerto Rico Civil Code.

### POST-REMEDIES FOR DUE PROCESS VIOLATIONS

40. Post-remedies are **appropriate** to be considered only for procedural due process violations but not for substantive due process constitutional violations. This is so because **substantive** due process constitutional violations, actionable under § 1983, are complete when the wrongful action is taken. <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U. S. 327, 331). See also <u>Mckinney v. Pate</u>, 20 F.3d 1550 (11th Cir. 1994).

41. In the case at bar, for the **procedural** due process violations related to the denial of teaching summer school in 2018 by defendant José Heredia-Rodríguez and the denial of teaching summer school in 2019 by defendant Luis Tapia-Maldonado, such post-remedies did not exist or were not adequate[1]. Once the Plaintiff is being denied the opportunity to teach summer courses, there is no remedy available, especially because it

---

[1] As of this date, the President of the University of Puerto Rico has not adjudicated Plaintiff's appeal of a Resolution made by a former Utuado's Rector in November 2016, case no. 90.1118.

would have had to operate retroactively, and the university won't issue a back pay for a job that had not been performed.

42. For the procedural due process violations related to defendant Luis Tapia-Maldonado's restriction of Plaintiff's entrance to UPRU, post-remedies were not available or were not adequate because to begin with, defendant Luis Tapia-Maldonado did not even answer Plaintiff's request for a copy of the entrance restriction letter, foreclosing any opportunity the Plaintiff would have had to challenge his decision.

## ACCESS TO CAMPUS

43. As the Plaintiff mentioned in the Complaint, defendant Luis-Tapia Maldonado never sent the Plaintiff a copy of the letter he sent to the university guards concerning restriction to campus entrance to the Plaintiff, even when the Plaintiff asked him for it. Defendant Luis-Tapia Maldonado had not explained or justified to this Court why he had restricted Plaintiff's entrance to Campus. On the other hand, Plaintiff contends that defendant Luis Tapia-Maldonado's decision to restrict Plaintiff's entrance to campus was wholly without support. Certainly, defendant Luis Tapia-Maldonado's decision to restrict Plaintiff's entrance to campus was not taken for academic concerns, nor was it otherwise justifiable with basis in fact. Therefore, his conduct was a violation to substantive due process of the Plaintiff. Also, because defendant Luis Tapia-Maldonado did not give the Plaintiff notice and opportunity for a hearing when he made that decision, he violated Plaintiff's right to procedural due process. The following is taken from the case Dunkel v. Elkins, 325 F. Supp. 1235 (D. Md. 1971):

> We hold that a state university has no less a right to prohibit access to its campus to an "outsider" to the university community if he has engaged in conduct which violates constitutional standards clearly embodied in state

law, particularly if there is reason to believe that he will again engage in such conduct. However, except in an emergency, such powers of control should not be exercised, <u>without a prior administrative hearing, to deprive any person, as an individual, of access to a state university campus</u>. (*Our Emphasis.*)

44. In the specific case of the University of Puerto Rico, restriction to campus entrance against University Regulations. Section 32.4.5 of the General Regulations of the University of Puerto Rico indicates that:

> "The free access and exit of people from the facilities of the University and from the classrooms or buildings that are part of it will not be impeded at any time". *University of Puerto Rico General Regulations. Section 32.4.5.*

45. Consequently, defendant Luis-Tapia Maldonado's restriction to Plaintiff's entrance to campus was also a violation of a right guaranteed by university regulations.

46. In paragraphs 39 and 40 of their "Motion to Dismiss", Defendants stated that the UPR has authority to impose restrictions on access to its campus as long as such restrictions are not promulgated with the intent of restricting first amendment rights. Therefore, they alleged that Plaintiff's restriction from access to campus based on disciplinary charges of sexual harassment does not present an actionable liberty interest under Section 1983. Plaintiff disagrees. In <u>Hague v. Committee for Industrial Organization</u>, 307 U.S. 496, Mr. Justice Stone wrote: "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens". It

happens that a university campus is such a public place. <u>Dunkin v. Elkin</u>, 325 F. Supp. 1235 (D. Md. 1871). In <u>Dunkin v. Elkin</u>, *supra*, was established that: "while the State undoubtedly possesses power to control the use made of its premises, it **cannot do so without regard to the Constitution**". (*Our Emphasis.*). Restriction to Plaintiff's entrance to UPRU-a public campus- based on sexual harassment charges, without more, is simply an unjustified reason. Consequently, defendant Luis Tapia-Maldonado's restriction to plaintiff's entrance to UPRU was an arbitrary and capricious decision amounting to a constitutional violation.

## EXHAUSTION OF STATE REMEDIES

47. A party need not exhaust his state remedies before bringing a Sec. 1983 actions. <u>Patsy v. Board of Regents</u>, 457 U.S. 496 (1982); <u>Miller v. Town of Hull</u>, 878 F.2d523,530, (1st Cir., cert. denied,493 U.S. 976 (1989).

48. In their "Motion to Dismiss" the Defendants suggest this Honorable Court should abstain from entertaining the claims brought by Plaintiff as they involve an ongoing state administrative proceeding.

49. The relief sought by the Plaintiff in the administrative procedure is not the same as the relief sought in this judicial procedure. In the administrative procedure, Plaintiff's objective is to get reinstated in his position as a university professor, but in this judicial procedure, he is asking redress for Defendants' violations to his constitutional rights.

### PLAINTIFF'S ENTITLEMENT TO SUMMER TEACHING

50. First, it should be mentioned that **Article 65.11** doesn't apply to summer courses as defendants suggest in their "Motion to Dismiss". Article 65.11 of the University of Puerto Rico General Regulations only applies to courses offered during the regular

16

semester, but it does not apply to summer courses. Ever since 2006, when Plaintiff started working for the University of Puerto Rico in Utuado (UPRU), he had been teaching summer school. *Certification No. 82* regulates the procedure to be followed for the distribution of summer courses at the University of Puerto Rico in Utuado. In pertinent part, *Certification No. 82*, establishes that:

> "In each academic department a list will be made with the names of the permanent and probationary teachers according to their seniority in the department and their academic preparation to offer the course. The selection of summer courses will be by rotation. If a teacher in the list is first choice to teach the course in a specific summer, **and he decides to give up his turn**, he will have priority to teach it in the following turn". (*Our Emphasis.*) *Certification No. 82, Article 23, 2013-2014, Administrative Board of the University of Puerto Rico in Utuado.*

51. According to the procedures and requirements established in *Certification No. 82, supra,* for teaching assignment for summer courses, plaintiff was **qualified** and **entitled** to teach summer school at UPRU in 2018. This entitlement creates a property interest to the Plaintiff that cannot be denied without the due process of law; especially, because earlier in 2018, Plaintiff **had agreed** with Dr. Javier Lugo-Pérez, who was his immediate supervisor at the time, to teach summer school in 2018.

52. In the case <u>Perry v. Sinderman</u>, the Supreme Court expressed: We have made clear that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by **"existing rules or understandings."** A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit

understandings that support his claim of entitlement to the benefit and **that he may invoke at a hearing**. Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S. Ct. 2694, 2699-2700, 33 L. Ed. 2d 570 (1972). (*Internal citations omitted*) (*Our Emphasis.*) Property interests may be created, however, not only by explicit contractual provisions but also by an implied contract or officially sanctioned rules of the work place. Francisco Chevereas-Pacheco, et. al. v. Juan M. Rivera-Gonzalez, et. al., 809 F.2d 125 (1st Cir. 1987).

## EQUAL PROTECTION CLAUSE

53. In their Motion to Dismiss, Defendants argue that Plaintiff "has failed to plead either that he belongs to a protected class or that he was treated differently from others who were similarly situated". Plaintiff disagrees.

54. Plaintiff's charges in the administrative process were related to violation of university regulations. At the hearings, the students that the university presented as witnesses against the Plaintiff revealed that the administrators had changed their final grade of F to a passing grade of C. This was done in violation of Certification No. 40 of the Administrative Board of UPRU. Not giving summer courses to the Plaintiff because he was "participating" in an administrative investigation was a violation of Certification 130 by defendant José Heredia-Rodríguez and defendant Luis Tapia-Maldonado. Defendant Luis Tapia-Maldonado's restriction to Plaintiff's entrance to campus was a violation of Certification 130 and a violation of the University General Regulations. Not giving the Plaintiff an opportunity to participate in the Informal Procedure; not taking or requiring an affidavit from the Plaintiff during the Informal Procedure of the "investigation"; not taking or requiring an affidavit from the students that the university presented as witnesses against the Plaintiff, all were violations of Certification 130 by defendants

Vivian Vélez-Vera and Marisol Díaz-Ocasio. The list of violations to university regulations by these and all Defendants in the administrative process against the Plaintiff goes on and on.

55. In a different administrative case, defendant José Heredia-Rodríguez was found guilty by a hearing officer to have violated several university regulations, when he called for a meeting in which his employment status was changed, resulting in an increase of his salary. Said action by defendant José Heredia-Rodríguez was not trivial, as later he was facing charges from the Puerto Rico Government Ethical Office related to that action. Even with the seriousness of defendant José Heredia-Rodríguez actions, no Administrative Complaint was ever issued against him by defendant Luis Tapia-Maldonado nor was a disciplinary action against him taken. On the other hand, changing the grades of the student is a serious violation to university regulations, and it could be a violation of state law for illegally altering government documents. In spite of all this, no Administrative Complaint against defendants Marisol Díaz-Ocasio and Vivian Vélez-Vera were ever issued by defendant José Heredia-Rodríguez, and when defendant Luis Tapia-Maldonado succeeded defendant José Heredia- Rodríguez as acting rector, he never issued an Administrative Complaint against Marisol Díaz-Ocasio and José Heredia-Rodríguez[2] related to the illicit change of grade for the students and all the violations to university regulations they had made during the investigation.

56. It is being made clear to this Court, that defendants José Heredia-Rodríguez and Luis Tapia-Maldonado had intentionally treated the Plaintiff differently, and they have selectively enforced university regulations against the Plaintiff but not against the Defendants, including themselves, with no rational basis for this different treatment

---

[2] When defendant Luis Tapia-Maldonado became rector, Vivian Vélez-Vera's employment at UPRU ended.

except with the bad faith intention to harm the Plaintiff. See <u>Village of Willowbrook v. Olech,</u> 528 U.S. 562, 564 (2000).

57. Moreover, defendant José Heredia- Rodríguez maliciously added three charges in the Administrative Complaint concerning *Quid Pro Quo* sexual harassment to worsen Plaintiff's administrative plight with the intention to harm the Plaintiff, even though in the Informal Procedure report that was submitted to him, there was not a trace of evidence to support it. This action by defendant José Heredia- Rodríguez is so outrageous that it shocks the conscience. Also, defendant Luis Tapia-Maldonado's campus entrance restriction to the Plaintiff was made with the bad faith intention to harm Plaintiff's reputation, and to support the administrative investigation by portraying the Plaintiff in a guilty light to the university community.

58. The administrative investigation on charges of sexual harassment against the Plaintiff was motivated by animus as a consequence of the failure of the students in the Mate. 3012 course. Throughout the administrative process, the Defendants have used their power oppressively against the Plaintiff. Consequently, they are liable, and not entitled to qualified immunity for the substantive due process violations mentioned in the Complaint inasmuch as they are liable and not entitled to qualified immunity for all the violations of Plaintiff's rights mentioned in the Complaint.

**WHEREFORE**, for the reasons stated above, the Plaintiff respectfully requests from this Honorable Court to **deny** Defendants' request to dismiss Plaintiff's Complaint.

RESPECTFULLY SUBMITTED.

This, the 16th day of February 2021.

Luis S. Arana Santiago
PRO SE[3]
P.O. Box 500
Orocovis, PR, 00720
arana2121@yahoo.com
(787) 624-9583

---

[3] Plaintiff is not registered in any automatic response system like SUMAC or CM/ECF. Therefore, all correspondence regarding this Complaint should be sent to the contact information provided in this document.

## CERTIFICATE OF SERVICE

I certify that on February 16, 2021, I sent a copy of the present motion to the email address of all counsel and parties on record.

This the 16th day of February 2021.

Luis S Arana Santiago
PRO SE
P.O. Box 500
Orocovis, PR, 00720
arana2121@yahoo.com
(787) 624-9583

**LIC. JUAN M. CASELLAS-RODRÍGUEZ**
**NOLLA, PALOU & CASELLAS, LLC**
PO Box 195287
San Juan, PR 00919-5287
jmc@npclawyers.com

**LIC. JORGE L. FLORES- DE JESÚS**
**SÁNCHEZ BETANCES SIFRE**
**& MUÑOZ NOYA PSC**
PO Box 195055
San Juan, PR 00919-5055
jflores@sbsmnlaw.com